# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

CINDY L. MONROE,

                                        Plaintiff,

             v.                                        3:14-CV-1035
                                                       (MAD/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

SCOT G. MILLER, ESQ., for Plaintiff
PETER W. JEWETT, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

    This matter was referred to me for report and recommendation by the Honorable
Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

    On November 22, 2011, plaintiff protectively filed an application for Disability
Insurance Benefits ("DIB"), alleging disability beginning December 31, 1999.
(Administrative Transcript ("T") at 10, 104-12).  The application was denied initially
on February 14, 2012. (T. 51-54).  Plaintiff requested a hearing before an
Administrative Law Judge ("ALJ"), which was held on February 19, 2013. (T. 27-45).
On April 9, 2013, ALJ Elizabeth W. Koennecke found plaintiff was not disabled. (T. 7-
26).  The ALJ's decision became the Commissioner's final decision when the Appeals
Council denied plaintiff's request for review on June 24, 2014. (T. 1–5).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth

inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its

interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  **FACTS**

As of the date of the administrative hearing on February 19, 2013, plaintiff was 49 years old.[1] (T. 31).  She resided with her husband. (T. 151).  Plaintiff was a high school graduate, and had completed one year of college.  (T. 32).  Plaintiff had also completed a six month training program and a cardiopulmonary resuscitation course in connection with her work as a surgical technician, a position she held at various hospitals in New York and Maryland from 1984 to 2004. (T. 32, 161).  Her job responsibilities included preparation and sterilization of surgical instruments, passing instruments and supplies to surgeons in the operating room, and counting instruments before and after surgery. (T. 161).  Plaintiff left this job after receiving an unfavorable performance review and being denied an annual raise, a situation that plaintiff

---

[1] Plaintiff was 45 years old on the date last insured. (T. 21).

attributed to difficulties related to her mental impairments. (T. 37-38). Plaintiff considered doing volunteer work after leaving this position, but testified that she had not worked since her alleged onset date of August 1, 2004. (T. 33).

Plaintiff had been receiving psychiatric treatment for approximately twenty years, and was diagnosed with bipolar disorder on or about the year 2000. (T. 35, 291). As of the date of her hearing, plaintiff had seen the same psychiatrist, Dr. Albert Wolkoff, for counseling and medication for the last fifteen years. (T. 31, 291). Plaintiff testified that she also suffered from anxiety and depression, and that she was on seven different types of psychiatric medications as of the date of her hearing. (T. 40). Except for a 2011 emergency room visit that occurred after the date last insured, plaintiff had never been hospitalized in connection with her mental health problems. (T. 228-30).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 15-18). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. THE ALJ'S DECISION

The ALJ determined that plaintiff met her insured status through June 30, 2009, and that plaintiff had not engaged in substantial gainful activity from her amended alleged onset date of August 1, 2004[2] through her date last insured. (T. 13). At step two of the sequential evaluation, the ALJ found that plaintiff's diagnosed bipolar

---

[2] In her original application for disability benefits, plaintiff alleged an onset date of December 31, 1999. (T. 109). Plaintiff voluntarily amended this date to August 1, 2004 at her hearing. (T. 33).

disorder constituted a severe impairment. The ALJ also concluded that plaintiff's anxiety was not a severe impairment, due to the lack of a formal diagnosis. (T. 13). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 14).

The ALJ found at step four of the analysis that plaintiff, who did not allege any physical impairments, had the RFC to perform a full range of unskilled work at all exertional levels. (T. 16). As part of her determination, the ALJ found that plaintiff retained the ability, on a sustained basis, to constantly understand, carry out and remember simple instructions; to frequently respond appropriately to supervision, coworkers, and usual work situations; and to constantly deal with changes in a routine work setting. (*Id.*).

In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (*Id.*). The ALJ also stated that she considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.929 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*). Addressing credibility, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible, to the extent that they were

6

unsupported by competent medical evidence and opinion and contradicted by other evidence in the record. (T. 17-18).

At step four, the ALJ also determined that plaintiff would not have been able to perform her past relevant work as a surgical technician through the date last insured, because the position required skilled work. (T. 18-19). The ALJ proceeded to step five, and taking into consideration plaintiff's age, education, work experience and RFC, determined that there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. (T. 21-22). Accordingly, the ALJ determined that plaintiff was not disabled at any time between the amended alleged onset date, August 1, 2004, to the date last insured, June 30, 2009. (T. 23).

## V. ISSUES IN CONTENTION

Plaintiff raises the following argument:

1. The ALJ's RFC assessment is not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 11-17) (Dkt. No. 9).

Defendant argues that the Commissioner's determination is supported by substantial evidence and should be affirmed. (Def.'s Br. at 4-12) (Dkt. No. 10). For the following reasons, this court agrees with the defendant and will recommend dismissing the complaint.

## DISCUSSION

## VI.  RFC EVALUATION/TREATING PHYSICIAN

### A.  Legal Standards

#### 1.  Treating Physician

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and not inconsistent with other substantial evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is *not* required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must properly analyze the reasons that the report of a treating physician is rejected. *Id.*

An ALJ may not arbitrarily substitute his/her own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

Notwithstanding the "treating physician rule," it is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon

"adequate findings supported by evidence having rational probative force." *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (citing *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002)). A conclusory statement of disability is not binding on the ALJ if that opinion is inconsistent with substantial evidence in the record. *Michels v. Astrue*, 297 F. App'x 74, 76 (2d Cir. 2008) (citing, *inter alia, Shaw ,*, 221 F.3d at 131); *Veino*, 312 F.3d at 588. *See* 20 C.F.R. § 404.1527(e)(1) (a statement by a medical source that a claimant is "disabled" does not mean that the Commissioner will make that determination). The term "disabled" is a legal, not a medical definition. *Id.*

## 2.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make

conclusory statements regarding a plaintiff's capacities.  *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

Although the RFC determination is reserved for the commissioner, the RFC assessment is still a medical determination that must be based on medical evidence of record, and the ALJ may not substitute his own judgment for competent medical opinion. *Walker v. Astrue*, No. 08-CV-828, 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010) (Rep't.-Rec.) (citing 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)), *adopted,* 2010 WL 2629821 (W.D.N.Y. June 28, 2010); *Lewis v. Comm'r of Soc. Sec.*, No. 6:00-CV-1225, 2005 WL 1899399 at *3 (N.D.N.Y. Aug. 2, 2005)).  The ALJ is not qualified to assess a plaintiff's RFC "on the basis of bare medical findings," and where the medical findings in the record merely "diagnose" a plaintiff's impairments and do not relate those diagnoses to a specific RFC, an ALJ's determination of RFC without a medical advisor's[3] assessment is not supported by substantial evidence.  *Walker*, 2010

---

[3] In addition to the plaintiff's own physicians and other medical sources, the ALJ may rely upon a "medical advisor" who is a non-examining state agency "medical consultant" or an examining consultative physician to whom the plaintiff was sent at agency expense. *See Walker*, 2010 WL 2629832 at *6-7.

WL 2629832, at *6 (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008); *Isaacs v. Astrue*, No. 1:08-CV-828, 2009 WL 3672060, at *11 (S.D. Ohio 2009) (the ALJ erred in determining an RFC without reference to a medically determined RFC, bridging the raw medical data to specific functional limitations)). In certain circumstances, including where there is a relatively small degree of impairment, the ALJ may render a "common sense" judgment about a plaintiff's functional capacity without a physician's assessment. *Id.* (citing *Manso Pizarro v. Sec. of Health & Human Services*, 76 F.3d 15, 17 (1st Cir. 1996)).

**B.    Application**

**1.    Treating Physician**

The only relevant medical evidence in the record was a retroactive Mental RFC Assessment and a state disability questionnaire prepared by plaintiff's treating psychiatrist, Dr. Wolkoff, together with Dr. Wolkoff's treatment notes for the period from 2004 through 2013. (T. 266-329). Plaintiff contends that the ALJ failed to properly analyze Dr. Wolkoff's opinion in a manner consistent with the treating physician rule. (Pl.'s Br. at 11-15).

Plaintiff testified that she first began treatment with Dr. Wolkoff in 1998 after a visit to the emergency room[4], and that she was seeing him on a regular basis as of the date of her hearing. (T. 35). Dr. Wolkoff completed a December 2, 2011 Mental RFC Assessment that noted plaintiff's "long history of mania and depression" and included a

_____

[4] Dr. Wolkoff's Mental RFC Assessment lists his first treatment date with plaintiff as February 18, 2000. (T. 291).

diagnosis of bipolar disorder. (T. 291-92). He supplemented this report on January 11, 2013 with a statement that the restrictions set forth in the Mental RFC Assessment were applicable from 2004 through the date of his report. (T. 301). While plaintiff was described in the RFC evaluation form as having an "unlimited" ability to follow work rules, a "good" use of judgment, and the ability to function independently, plaintiff's ability to maintain attention/concentration was described as "fair," her ability to interact with her supervisors as "fair" to "poor," and her ability to relate to co-workers as "poor." (T. 292). Dr. Wolkoff also described plaintiff as having no ability to deal with the public or to deal with stress. (*Id.*). While there were no limitations on plaintiff's ability to maintain her personal appearance, Dr. Wolkoff found that plaintiff had only "fair" reliability, and he described her ability to behave in an emotionally stable manner and relate predictably in social situations as "poor" to "none." (*Id.*).

The ALJ assigned Dr. Wolkoff's Mental RFC Assessment little weight, and noted that the report contained internal inconsistencies. (T. 18). For example, Dr. Wolkoff opined that plaintiff would be "off task" between 30% and 50% of the time during a typical workday due to her bipolar disorder, but also described plaintiff's mood as "stable most of the time." (T. 291). Despite the significant limitations described in his assessment, Dr. Wolkoff described plaintiff's current response to treatment as "good," while offering a "good/fair" overall prognosis. (T. 291-92).

The ALJ also found Dr. Wolkoff's description of significant functional limitations inconsistent with his treatment notes. (T. 18). For example, the ALJ found that Dr. Wolkoff's treatment notes for the relevant time period "only very occasionally"

reflect that plaintiff's mood and affect were sad. (T.18, 285, 289, 302, 309, 314, 320, 324-25). These findings typically coincided with family difficulties or the illness or death of a pet. (T. 289, 309, 320, 324-25). Dr. Wolkoff's notes more frequently included mental health evaluations that describe plaintiff's mood, affect or energy as "stable" or "good." (T. 280-283, 286-87, 290, 303-06, 310-312, 315, 318). Plaintiff described her mood as "happy" at the time she quit her job in 2004, and in July 2007 reported that "I love my life." (T. 305, 326). Similarly, Dr. Wolkoff reported to the New York State Office of Temporary and Disability Assistance that plaintiff had "racing thoughts all the time" but, as the ALJ pointed out in her decision, Wolkoff's notes for the relevant time period do not mention this issue at all.[5] (T. 294, 307).

The ALJ also found Dr. Wolkoff's conclusions in the RFC evaluation, that plaintiff had no ability to deal with stress or the public and had significant limitations in behaving in an emotionally stable manner or relating predicably in social situations, were inconsistent with plaintiff's range of activities of daily living as reflected in his treatment notes. (T. 18). The ALJ cited as examples plaintiff's reports that she and her husband went out to dinner; that she planned and attended a baby shower for her niece; and that she engaged in numerous recreational activities including a snowmobiling weekend, extended trips to Ontario and Quebec, Canada, and multiple cruise vacations. (T. 19, 283-84, 286, 302-03). Aside from a fear of crashing her snowmobile, plaintiff

---

[5] Prior to the alleged onset date, Dr. Wolkoff June 18, 2004 treatment notes describe plaintiff as having rapid thoughts in the morning. (T. 327). His January 3, 2011 treatment notes reflect that plaintiff had racing thoughts around the same time that plaintiff stopped taking her medication and was rushed to the emergency room. (T. 35, 273). This incident occurred after plaintiff's last insured date.

did not express any stress or anxiety associated with these activities during her meetings with Dr. Wolkoff. (T. 285).

Despite plaintiff's contention to the contrary, the ALJ's assessment of Dr. Wolkoff's opinion was consistent with the regulations. The ALJ cited his fifteen year treatment relationship with plaintiff in her decision. (T. 13). At the hearing, the ALJ requested all of Dr. Wolkoff's treatment records, and held the administrative record open for two weeks to allow plaintiff an opportunity to submit the additional evidence. (T. 30). Her extensive summary of Dr. Wolkoff's treatment notes discusses the frequency of his examinations of plaintiff, as well as notable gaps in that treatment, such as a four month period between May and September 2008. (T. 19). In light of the ALJ's appropriate consideration of Dr. Wolkoff's Mental RFC assessment and the inconsistencies with his treatment notes that are discussed in the ALJ's decision and supported by the record, the ALJ's assignment of little weight to Dr. Wolkoff's report is supported by substantial evidence.

Plaintiff has accurately pointed out one error in the ALJ's decision regarding the medical opinion evidence, but this court concludes that the ALJ's error is harmless. (Pl.'s Br. at 13). A state agency psychological consultant, L. Meade, reviewed plaintiff's application on January 27, 2012, but found insufficient evidence to determine that a mental impairment existed. (T. 248). Meade did not include any narrative or explanation beyond the lack of evidence, and the majority of the reporting form was blank. (T. 248-261). The ALJ noted that Meade did not have a complete set of records from Dr. Wolkoff at the time of the consultant's document review. (T. 14).

Because the consultant did not have an opportunity to review the complete medical record, the ALJ assigned Meade's opinion no evidentiary weight. (T. 14).

Despite assigning no weight to the consultant's opinion, the ALJ concluded her application of the treating physician rule in her decision by stating:

> Although Dr. Wolkoff is an acceptable medical source within the meaning of 20 CFR 404.1513 and a treating source within the meaning of 20 CFR 404.1502, his opinions are not well supported by medically acceptable clinical and laboratory diagnostic techniques and **are inconsistent with other substantial evidence, including the opinion of the State Agency psychological consultant**. As such, Dr. Wolkoff's opinion is not entitle [sic] to controlling weight and is instead given little evidentiary weight.

(T. 20-21) (emphasis supplied). Plaintiff contends that this misstatement merits remand, as the ALJ appears to be relying upon a consultant's opinion that had previously been assigned no evidentiary weight. This court disagrees, and concludes that the error is harmless.

Purely clerical errors or proofreading mistakes are harmless where there is no prejudicial effect on the plaintiff. *Mortise v. Astrue*, 713 F. Supp. 2d 111, 128 (N.D.N.Y. 2010) (reference to incorrect exhibit was harmless error); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d. Cir. 2010) (error is harmless where application of correct legal principles could lead only to the same conclusion.). Plaintiff has not identified any actual prejudice that resulted from the ALJ's erroneous reference to the state consultant's opinion. In the context of the decision, it is apparent that the state agency consultant's report, which was almost completely blank and had been expressly disregarded by the ALJ, had no impact on the weight assigned to Dr. Wolkoff's

opinion. The ALJ devoted a significant portion of her decision to the inconsistencies between Dr. Wolkoff's treatment notes, which included mental status examinations, and the significant limitations reflected in his Mental RFC Assessment. (T. 18-21). The ALJ also properly identified the internal inconsistencies in the Mental RFC Assessment, as described above, as well as the broad scope of plaintiff's activities of daily living. (*Id*.). Therefore, the ALJ had already sufficiently explained the actual evidence that prompted her to assign Dr. Wolkoff's opinion little weight. Accordingly, this court concludes that the ALJ's erroneous reference to the state consultant's report is harmless.

## 2.    RFC

Plaintiff further contends that the ALJ's RFC determination is flawed because Dr. Wolkoff's Mental RFC Assessment was the only opinion from an acceptable medical source in the record, and by assigning it little weight, the ALJ was improperly imposing her own interpretation of the medical evidence. (Pl.'s Br. at 16). In plaintiff's view, the ALJ erred by failing to either request clarification or additional information from Dr. Wolkoff to clear up any perceived gaps in the medical record, or to request the opinion of a consultative examiner. (Pl.'s Br. at 13-14).

Plaintiff is correct that even when an ALJ's discounting of medical opinion evidence is proper, remand is still necessary where the remaining record evidence is insufficient to support the ALJ's RFC. *Bechard v. Comm. of Soc. Sec.*, No. 8:13-CV-1472 (GTS/WBC), 2015 WL 5999327, at *6 (N.D.N.Y., Oct. 14, 2015) (collecting cases). Where "the record lacks a broad assessment of [plaintiff's] physical functional

limitations by an acceptable medical source . . . . there is an insufficiency in the record that the ALJ should [address], either by obtaining the opinion of a consultative examiner or by recontacting one of [plaintiff's] treating physicians." *Larkin v. Colvin*, No. 13-CV-567 (GTS), 2014 WL 4146262, at *9 (N.D.N.Y. Aug. 14, 2014).

However, it is not per se error for an ALJ to make the RFC determination absent a Medical Source Statement or other formal medical opinion. *Tankisi v. Commissioner of Social Security,* 521 Fed. App'x. 29, 32 (2d Cir. 2013); *Lewis v. Colvin*, No. 13-CV-1072S, 2014 WL 6609637, at *6 (W.D.N.Y., Nov. 20, 2014). In *Tankisi,* the Circuit Court held that a determination is based upon substantial evidence, so long as "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." 521 Fed. App'x. at 34. For example, a record may be found sufficient where it includes a physician's assessment of the plaintiff's limitations. *Id.* Similarly, an ALJ is under no duty to seek additional information where the record includes treatment notes and there are no obvious gaps in the medical history. *Lewis,* No. 13-CV-1072S, 2014 WL 6609637, at *6.

In this case, plaintiff had been seeing the same psychiatrist for at least fifteen years at the time of the hearing, and the ALJ was able to consider all of Dr. Wolkoff's treatment notes dating back to before the alleged August 1, 2004 onset date. (T. 266-329). The ALJ gave plaintiff additional time after the hearing to ensure that all medical records were submitted, and plaintiff has not submitted any additional evidence or argued that her medical records are incomplete. (T. 13). Dr. Wolkoff's treatment notes not only include a description of plaintiff's symptoms, but also describe regular mental

status examinations that offer a contemporaneous medical assessment of plaintiff's mood, energy, affect, and other characteristics relevant to her ability to perform substantial gainful activity. Therefore, the ALJ had substantial medical evidence to support her RFC determination, and remand for further clarification or a consultative examination of plaintiff is unnecessary.

The ALJ did not base her RFC determination on the medical evidence alone, but also took into account plaintiff's testimony and her well-documented daily activities and social functioning. (T. 17-21). Where there is relatively little physical impairment, an ALJ may permissibly render a common sense judgment about a plaintiff's functional capacity. *Walker*, 2010 WL 2629832, at *6. Here, plaintiff did not allege any physical impairment, and the ALJ relied upon substantial evidence from plaintiff's application for disability benefits, the hearing testimony, and the treatment notes regarding plaintiff's prior employment, her social functioning, and her activities of daily living in order to reach an RFC determination under that "common sense" approach.

For example, plaintiff testified that she voluntarily left her position as a surgical technician in August 2004 after she refused to sign an unfavorable performance evaluation and was denied an annual raise. (T. 38). Plaintiff testified that she called in sick to work about once every two weeks. (T. 17, 36). She described difficulty getting along with surgeons and co-workers, that "certain surgeons didn't want to work with me any longer because I would question their ability as surgeons." (T. 37). She made surgeons "nervous" when she "would just like kind of, you know, sling the instruments in the surgeons' hands and they would look at me." (*Id.*). Plaintiff attributed these

18

difficulties to the manic phase of her bipolar disorder, but agreed with the ALJ that an operating room was a uniquely stressful work environment. (T. 38-39). The ALJ noted that plaintiff hesitated and did not answer the question when asked whether she had ever spoken to her psychiatrist about whether she should be working. (T. 17). This court finds that the ALJ had substantial evidence to find that there was a sufficient number of unskilled jobs at all exertional levels in the national economy that plaintiff could perform, even if she could not return to the skilled position of surgical technician in the uniquely stressful work environment of an operating room. (T. 22).

As part of her application for benefits, plaintiff reported that on a daily basis, she took care of animals[6]; prepared her husband's breakfast and packed his lunch; did laundry; did the dishes; and drove to the grocery store, the pet store and the veterinarian.[7] (T. 151-52). She had several hobbies, including gardening, candle making, and working on puzzles. (T.287, 322). Her treatment records echo these daily

---

[6] At the alleged onset date, plaintiff was caring for two Great Dane dogs who suffered from health problems. When these pets had to be put down, plaintiff soon began caring for a new puppy and was considering purchasing a horse. (T. 308, 311).

[7] At the hearing, plaintiff testified that she rarely left the house, and did so only when she would be around a very limited number of people, such as shopping at small stores or going to Wal-Mart before dawn. (T. 17, 39). The ALJ concluded that plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible. Plaintiff has indirectly challenged this credibility determination through her brief's heavy reliance on her own hearing testimony regarding functional limitations. In addition to the documented contradictions between plaintiff's testimony and the record, the ALJ also noted that the most severe symptoms and limitations described by plaintiff, including racing thoughts (T. 39, 42, 327) , difficulty sleeping (T. 42, 185), and a panic attack requiring a trip to the emergency room (T. 42, 228-230), all occurred prior to the alleged onset date or after the date last insured. (T. 17-18, 20). In light of these findings, this court concludes that the ALJ's credibility determination was supported by substantial evidence.

activities, and the ALJ noted that plaintiff regularly engaged in other social and recreational activities that could be considered stressful: riding snowmobiles and all terrain vehicles (T. 274, 286, 302-03); extended trips to Ontario and Quebec, Canada (T. 283, 285); and several cruises to the Carribean with her husband and with another couple. (T. 302, 312, 326). In addition to the planning and attention to detail associated with these activities as well as extensive contact with the public, the ALJ also identified other activities reported by plaintiff that required working with others, coordinating schedules and adjusting to changes: planning a baby shower (T. 310-11); hiring and overseeing contractors installing an in-ground pool on her property (T. 290), and purchasing a weekend cottage. (T. 304). The treatment notes do not reflect any concern by plaintiff about her ability to meet any of the demands associated with these projects.

In light of the ALJ's detailed analysis of the contemporaneous medical treatment notes, plaintiff's reported activities of daily living, and documented examples that reflect a "common-sense" connection between plaintiff's activities and the functions required to perform substantial gainful activities in the workplace, this court concludes that the ALJ's RFC determination was supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and plaintiff's complaint be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk

of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:        November 3, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge